IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DENNIS COOPER,
    Plaintiff,

v.

CYNTHIA LINK, *et al.*,
    Defendants.

CIVIL ACTION NO. 18-CV-4481



DEC 12 2018

## MEMORANDUM

TUCKER, J.                                                                        DECEMBER 12, 2018

Plaintiff Dennis Cooper brings this civil action against more than forty Defendants pursuant to 42 U.S.C. § 1983 challenging the constitutionality of various conditions at SCI Graterford, where he was previously confined, and SCI Fayette, where he is currently confined.[1] Cooper seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Cooper leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), without prejudice to Cooper filing an amended complaint.

### I. FACTS

It is difficult for the Court to get a clear understanding of the claims Cooper raises against each Defendant because of the number of Defendants, the number of issues raised in the Complaint, and the manner in which the Complaint is pled, including the fact that it relies

---

[1] Although the caption only lists thirty-nine Defendants, some of those named Defendants refer to a group of two or more individuals. In citing to the Complaint, the Court adopts the pagination assigned to the Complaint by the CM-ECF docketing system.

1

heavily on over one hundred pages of exhibits to state a claim, most of which are grievances.[2] The Court has done its best to review the Complaint and exhibits to determine the nature of Cooper's claims.

It appears from the entire filing that Cooper was placed in restricted housing or administrative custody at SCI Fayette, transferred to SCI Graterford for a resentencing shortly thereafter, and remained in restricted status until he was transferred back to SCI Fayette. Grievances attached to the Complaint reflect that Cooper spent approximately two months in restricted housing—from May 14, 2017 through July 17, 2017 at the latest. Cooper's claims generally concern his placement in restricted status, his assertion that he should have been transferred to a Philadelphia prison once his original sentence was vacated, and the conditions of his confinement at SCI Graterford. Leaving aside the more conclusory allegations in the Complaint, Cooper appears to be raising claims based on the following matters:

1. Cooper's placement in restricted status initially due to an investigation after Cooper was found to have a "hot" urine, and/or because he arrived at SCI Graterford from SCI Fayette "on A/C status," and/or without any reason at all and without an opportunity for review (Compl. at 20);

2. Cooper's allegation that he was restricted from making phone calls while on restricted housing status;

3. Lack of access to the law library, which Cooper alleges prevented him from preparing for his case because "if he would have had [access] he would have known how to present

---

[2] The exhibits attached to the Complaint indicate that several of Cooper's grievances were not timely filed in accordance with prison regulations, which suggests that Cooper may not have properly exhausted administrative remedies as required by the Prison Litigation Reform Act. *See Nyhuis v. Reno*, 204 F.3d 65, 78 (3d Cir. 2000).

2

some more mitigating circumstance[s] and got a lesser sentence" than the five to ten years of incarceration that he received (Compl. at 13 & 35);

4. Unsanitary conditions that prevented him from preparing for court, namely that the area where he was incarcerated smelled like urine, which affected his ability to think;

5. Cooper's allegation that he should have been transferred to a Philadelphia jail in May of 2017 because his sentence was vacated, and that if he had been transferred he probably would have been released on bail (Compl. at 14 & 36);

6. Cooper was "forced to walk up and down steps to shower" even though he walks with a cane, there was a shower downstairs, and he was on various medications that caused his balance to be off and on a bottom bunk/bottom tier restriction per the medical department (Compl. at 16 & 29);

7. Cooper mentions retaliation at times in his Complaint, but he generally does not say who retaliated against him or what they retaliated against him for, except on one occasion he indicates that he was placed in a cell with stagnant water outside due to plumbing issues, which smelled of mildew and human waste, in retaliation for filing grievances;

8. "Discrimination" based on Cooper's allegation that he was told he could not have a cane even though another inmate had one, and he was denied a cane while on restricted/AC status at SCI Graterford (Compl. at 25 & 27);

9. Doctors discussed Cooper's medical issues in a location where they could be heard by other inmates (Compl. at 26);

10. Denial of psychiatric treatment at a time when Cooper contends he was feeling suicidal (Compl. at 27);

11. Cooper had to wait five days to see a doctor after falling in a puddle of water—which caused injury to his back and knee- –did not receive a cane or x-ray after he fell, and had to walk back to his cell after nurses determined he was able to handle the walk (Compl. at 28 & Ex. A-21); and

12. Cooper was not given a laundry bag to wash his sheets while at Graterford, so his sheets were never clean (Compl. at 33).

Regarding the fifth allegation listed above, *i.e.* that Cooper should have been transferred to a Philadelphia county prison, Cooper alleges that his sentence was vacated. Grievances attached to the Complaint reflect that prison staff looked into Cooper's allegation and reported that although Cooper's initial sentence was vacated, he was resentenced so he was still appropriately within state custody. Cooper also attached to his Complaint a copy of a docket from his state case, *Commonwealth v. Cooper*, CP-51-CR-0009765-2014 (Phila. Cty. Ct. Common Pleas), reflecting his sentence in that case was vacated on February 10, 2017 and that he was scheduled for resentencing.

The public docket for Cooper's criminal case also reflects that Cooper should have been transferred to a Philadelphia County prison for resentencing, and that he was not brought down from SCI Fayette for his first scheduled resentencing hearing. After resentencing was continued twice, the state court issued a writ to have Cooper moved to SCI Graterford for purposes of the resentencing. It appears that Cooper was transferred from SCI Fayette to SCI Graterford on May 16, 2017. He was resentenced on June 8, 2017 to one to two years of confinement in state prison. The docket for Cooper's criminal case also reflects that Cooper was represented by counsel from the Defender Association of Philadelphia.

4

Based on essentially the above allegations and numerous exhibits, most of which are grievances, Cooper filed this civil action, pursuant to 42 U.S.C. § 1983, against the following Defendants: (1) Cynthia Link; (2) Mark Capaozza; (3) Deputy Mr. Armel; (4) Deputy John Doe; (5) J. Hawk; (6) Deputy Mr. Nickleson; (7) Joseph C. Korszniak; (8) Mr. N. Rice; (9) Doctor Boley; (10) Doctor Sharon; (11) Lieutenant K. Ridgley; (12) Captn. (or) Lt. Jane Does one and two; (13) Mr. Bueno and Tucker; (14) John or Jane Doe; (15) Ms. Gretchen Scarry; (16) Ms. Sassano; (17) John (or) Jane Doe; (18) Ms. Gower; (19) Ms. Nemal; (20) Ms. Fenn (&) Kolessar; (21) John (or) Jane Doe;[3] (22) John (or) Jane Doe;[4] (23) Capt. G.S. Robinson; (24) Terra; (25) Capt. W. Tift; (26) Mr. D. Collins; (27) Parker; (28) Mr. K. Ridgley; (29) Ms. Nixon; (30) Debra A. Hawkinberry; (31) Ms. M. Savage; (32) W. Louden; (33) Mr. Patton; (34) Mr. Alimon; (35) Mr. Seed; (36) Chris Steffinino; (37) S.L. Brown; (38) Peter Saavada; and (39) Jane or John Doe(s).[5] Cooper indicates that he is raising First Amendment claims for denial of access to the court, Eight Amendment claims, and Fourteenth Amendment Due Process claims.[6] (Compl. at 18.) Cooper also indicates that the doctors who discussed his medical information

---

[3] Six John or Jane Doe Correctional Officers at SCI Graterford are incorporated here. (Compl. at 8.)

[4] Five John or Jane Doe nurses at SCI Graterford are incorporated here. (Compl. at 9.)

[5] These Defendants are identified as psychologists employed at SCI Graterford. (Compl. at 12.)

[6] Cooper also mentions the Due Process Clause of the Fifth Amendment. However, as the Defendants are state actors, rather than federal actors, the Fifth Amendment is inapplicable here. *See Mutschler v. SCI Albion CHCA Health Care*, 445 F. App'x 617, 621 (3d Cir. 2011) (per curiam) (citing *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)); *Basile v. Elizabethtown Area Sch. Dist.*, 61 F. Supp. 2d 392, 403 (E.D. Pa. 1999). For the same reason, there is no basis for any *Bivens* claims here, as the Defendants are state actors rather than federal actors.

5

violated the Health Insurance Portability and Accountability Act (HIPAA). He seeks declaratory relief and damages.

## II. STANDARD OF REVIEW

The Court grants Cooper leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[7] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* The Court may also consider exhibits attached to the complaint and matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). As Cooper is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

Moreover, Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short a plain statement of the claim showing that the pleader is entitled to relief." A district court may *sua sponte* dismiss a complaint that does not comply with Rule 8 if "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quotations omitted). This Court has noted that Rule 8 "requires that pleadings provide enough information to put a defendant on

---

[7] However, as Cooper is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

6

sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue." *Fabian v. St. Mary's Med. Ctr.*, No. Civ. A. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (quotations omitted).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, the Complaint fails to state a claim as pled.

### A. The Complaint Fails to Comply with Rule 8 or State a Claim as Pled

It is difficult for the Court to determine whether Cooper has a basis for a plausible claim against the Defendants due to the manner in which the Complaint is pled. Cooper complains of numerous issues and events, brings claims based on events that took place in two different facilities, and names more than forty Defendants. He also relies heavily on over one hundred pages of exhibits, mostly grievances, to state his claim. Cooper cannot move forward on his Complaint as pled because it is not clear what each Defendant did to violate his rights.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (quotations omitted). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "with

7

deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Cooper generally alleges that each Defendant was responsible for the matters described in his Complaint in the form of vague or generalized allegations that the Defendant was aware of certain events or conditions, had a responsibility to ensure the prison was working properly, or could have corrected the alleged constitutional violation(s). However, vague or general allegations that a Defendant is "aware" of constitutional violations, without any specific facts supporting that allegation, do not plausibly state a basis for the Defendant's personal involvement. Additionally, given the number of Defendants and the large number of matters complained of by Cooper, it is not clear what each Defendant is alleged to have done (or not done) that gives rise to a basis for a constitutional violation. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014). In other words, the allegations are too voluminous and disjoined to put the Defendants on notice as to what they have done or not done, or for the Court to clearly understand the nature of Cooper's claims against each Defendant in terms of what each Defendant did or did not do so as to give rise to liability. *See Binsack v. Lackawanna Cty. Prison*, 438 F. App'x 158, 160 (3d Cir. 2011) (per curiam) ("The compliant defies any attempt to meaningfully answer or plead to it, and it left the defendants having to guess what of the many things discussed constituted deliberate indifference on their part, or whether Binsack intended to also include a count that correctional officials failed to protect him from other inmates.

8

Moreover, his voluminous exhibits, do not, without the required 'short and plain statement,' communicate the nature of his claim, and would, in any event, be insufficient to satisfy Rule 8(a).").

In sum, Cooper cannot move forward on his Complaint as pled because it is not clear what each Defendant did to violate his rights. Accordingly, the Court will dismiss the Complaint with leave to amend so that Cooper can clarify and narrow his claims where appropriate. Cooper's Complaint also suffers from other deficiencies, which the Court will address below.

### B. HIPAA Claims

To the extent Cooper is raising claims against doctors under HIPAA, his claims fail. There is no private right of action under HIPAA. *See Rigaud v. Garofalo*, 2005 WL 1030196, at *3 (E.D. Pa. May 2, 2005); *see also Adams v. Eureka Fire Protection Dist.*, 352 F. App'x 137, 138 (8th Cir. 2009) (per curiam). Accordingly, there is no legal basis for any HIPAA claims.

### C. Claims That Cooper Should Have Been Transferred to Philadelphia Prison

Cooper claims that he should have been transferred to a Philadelphia prison once his sentence was vacated. He also claims that he probably would have been released on bail if he had been so transferred rather than remaining in the state system. Initially, Cooper's allegation that he would have been released on bail is speculative at best. In any event, inmates do not have a liberty interest in an anticipated release or a transfer to a more desirable institutional setting. *See Powell v. Weiss*, 757 F.3d 338, 343 (3d Cir. 2014) (finding no liberty interest in an "anticipated transfer to a community correctional center"); *Thompson v. Pitkins*, 514 F. App'x 88, 89 (3d Cir. 2013) (per curiam) ("[P]risoners have no liberty interest arising from the Due Process Clause in a particular place of confinement." (citing *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983)). Accordingly, Cooper cannot state a constitutional claim based on his allegation

9

that he should have been incarcerated in a county prison rather than in state prison while he awaited resentencing.[8]

## D. Retaliation

Cooper alludes to retaliation throughout his Complaint, but he has not stated a retaliation claim. "To establish a claim of retaliation, a prisoner must show: (1) that he was engaged in a constitutionally protected activity; (2) that he 'suffered some adverse action at the hands of the prison officials'; and (3) that the protected activity was 'a substantial or motivating factor' in the prison officials' decision to take the adverse action." *Jones v. Davidson*, 666 F. App'x 143, 148 (3d Cir. 2016) (per curiam) (quoting *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001) (internal quotations omitted)). Most of Cooper's allegations of retaliation are not associated with any facts showing engagement in a constitutionally protected activity related to an adverse action. Although Cooper alleges at one point that he was placed in a problematic cell for filing grievances, it is not clear what facts support this allegation and who allegedly is responsible for retaliating against Cooper. The Complaint therefore does not state a retaliation claim as pled.

## E. Denial of Access to the Courts

Cooper also cannot succeed on his claim that he was denied access to the courts. "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis*, 518 U.S. at 350). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access

---

[8] Although Cooper's sentence was vacated, his conviction was still valid and he was being held pending resentencing. Thus, his claims sound more in an institutional preference rather than in an allegation that he should not have been incarcerated at all.

10

claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.* Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam).

Here, the public docket for Cooper's criminal case reflects that he was represented by counsel. Accordingly, his right to access the courts was satisfied. Furthermore, Cooper's suggestion that he would have obtained a lesser sentence had he been able to research mitigation evidence is speculative at best, especially since it is not clear what mitigation claims he sought to raise. In sum, nothing in the Complaint supports a plausible basis for a claim that Cooper was denied access to the courts.

### F. Eighth Amendment Claims

Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.*

11

In the medical context, a prisoner states an Eight Amendment violation by alleging facts showing that prison officials were deliberately indifferent to his serious medical needs. *Id.* at 835. "Where prison officials know of the prisoner's serious medical need, deliberate indifference will be found where the official '(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Bearam v. Wigen*, 542 F. App'x 91, 92 (3d Cir. 2013) (per curiam) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the . . . scienter requirement of deliberate indifference." *Id.* at 236.

Some of the conditions alleged by Cooper—such as the two-month loss of phone privileges and the one-time smell of urine—simply do not amount to an Eighth Amendment violation. *See McDowell v. Litz*, 419 F. App'x 149, 152 (3d Cir. 2011) (per curiam) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003)) (holding that 90-day suspension of telephone privileges and loss of institutional employment as a result of disciplinary sanction did not violate the Eighth Amendment); *Young v. Beard*, 227 F. App'x 138, 141 (3d Cir. 2007) (per curiam) ("We also reject Young's claim that placement in disciplinary confinement itself amounted to cruel and unusual punishment" (citing *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997)); *Robinson v. Phelps*, 946 F. Supp. 2d 354, 365 (D. Del. 2013) (dismissing Eighth Amendment

12

claim where plaintiff alleged "he was forced to lie in his urine for five hours because [a nurse] refused to empty his urine jug").

Although it is possible that Cooper could state an Eighth Amendment claim based on the conditions at SCI Graterford and/or the issues with his medical care, the Complaint does not state such a claim as pled. That is because, as noted above, the facts are pled in a disjoined manner and it is not clear which Defendants are responsible for which events or actions. Accordingly, the contours of any such claims are not evident from the Complaint.

### G. Fourteenth Amendment Due Process Claim Based on Housing Status

Cooper also has not stated due process a claim based on his confinement in restricted housing, where it appears he was held for approximately two months. "[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)); *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) ("[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest [for purpose of triggering due process protection]." (quoting *Sandin*, 515 U.S. 472 (1995))). Two months in restricted custody is generally insufficient to trigger the type of liberty interest that affords due process protection. *See Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (holding that "exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed [. . .] by a court of law" and does not constitute a due process violation (quotation omitted)). Additionally, Cooper's allegations are not clear so it is difficult for the Court to determine exactly what aspect of the placement he is challenging. It is not clear

13

if he believes he was falsely charged with a "hot" urine, whether he is claiming he was placed in restrictive custody for no reason at all, and/or whether he is claiming that his restricted status should not have transferred to SCI Graterford. Accordingly, the Complaint does not state a due process claim as pled.[9]

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Cooper's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). However, the Court will give Cooper an opportunity to file an amended complaint in the event he can state a plausible claim against an appropriate defendant or defendants. An appropriate Order follows.

**BY THE COURT:**

_____
PETRESE B. TUCKER, J.

---

[9] To the extent Cooper sought to bring an equal protection claim because he was denied a cane, his claim fails as pled. "[T]o state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). Cooper suggests that another inmate was given a cane, but the Complaint does not provide sufficient factual allegations to plausibly conclude that Cooper and this inmate were similarly situated. *See Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (finding equal protection claim not pled where plaintiff failed to "allege facts showing that he was similarly situated to the inmates who received wheelchair footrests, crutches and canes, or that there was no rational basis for his different treatment").

14