# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DENNIS COOPER,
    Plaintiff,

v.      CIVIL ACTION NO. 18-CV-4481

CYNTHIA LINK, *et al.*,
    Defendants.

FILED FEB 26 2019 KATE BARKMAN, Clerk By____ Dep. Clerk

## MEMORANDUM

**TUCKER, J.**      FEBRUARY 25, 2019

Plaintiff Dennis Cooper filed this civil action against more than forty Defendants pursuant to 42 U.S.C. § 1983 challenging the constitutionality of various conditions at SCI Graterford, where he was previously confined, and SCI Fayette. In a Memorandum and Order entered on the docket December 12, 2018, the Court granted Cooper leave to proceed *in forma pauperis* and dismissed his Complaint without prejudice to amendment. Cooper sought, and was granted, an extension of time to file an amended complaint. He subsequently filed a "Motion to Amend in Order to Fix Defects in the Original File so a Valid Claim May be Stated Herein," which the Court will construe as Cooper's Amended Complaint. (ECF No. 11.) For the following reasons, the Court will dismiss the Amended Complaint in part, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and direct service of Cooper's remaining claims.

### I. FACTS AND PROCEDURAL HISTORY

#### A. Cooper's Initial Complaint

As explained in the Court's prior Memorandum, Cooper's initial Complaint was difficult to understand in light of the number of Defendants, the number of issues raised in the Complaint, and the manner in which the Complaint was pled, including the fact that it relied heavily on over

1

one hundred pages of exhibits to state a claim, most of which were grievances. Cooper appeared to be raising the following claims: (1) claims based on the fact that Cooper was not transferred to a county prison for purposes of his resentencing, which he believes deprived him of the opportunity to be released on bail; (2) claims based on his placement in the restricted housing unit (RHU) at SCI Fayette and SCI Graterford; (3) claims challenging the conditions in the RHU at SCI Graterford, including lack of access to the law library, availability of phone calls, and the fact that he slipped and fell in a puddle outside his cell where water stagnated for a period of time; (4) claims that he was denied prompt medical care after his fall, denied a cane, and required to walk up and down steps to shower even though he has a medical issue; (5) claims that he was denied psychiatric care; (6) claims that doctors discussed Cooper's medical issues in a location where they could be heard by other inmates in violation of the Health Insurance Portability and Accountability Act (HIPAA); and (7) retaliation claims.

After granting Cooper leave to proceed *in forma pauperis*, the Court screened Cooper's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). First, the Court concluded that Cooper's Complaint failed to comply with Federal Rule of Civil Procedure 8(a) or state a claim as pled because the voluminous pleading named over forty Defendants, relied heavily on over one hundred pages of exhibits, and did not clearly indicate what each Defendant did or did not do to violate Cooper's rights. Second, the Court dismissed any HIPAA claims because that statute does not give rise to a private cause of action. Third, the Court concluded that Cooper had not stated a constitutional claim based on the fact that he was not transferred to a county prison for resentencing, and therefore allegedly lost an opportunity to argue for bail, because inmates do not have a liberty interest in anticipated release or a transfer to a more desirable institutional setting.

Fourth, the Court found that Cooper's Complaint failed to state a retaliation claim as pled because many of his allegations of retaliation were not associated with factual allegations showing that Cooper engaged in constitutionally protected activity related to an adverse action. Fifth, Cooper could not establish that he was denied access to the courts because his right to access the courts was satisfied by counsel and since it was not clear what arguments he was prevented from pursuing. Sixth, the Court concluded that certain conditions challenged by Cooper did not amount to Eighth Amendment violations, and that other allegations were not clearly tied to the Defendants in a manner that would allow him to proceed on his claims as pled. Finally, the Court concluded that Cooper failed to state a due process claim based on his two-month confinement in the RHU, although it was also unclear in some respects what aspects of the placement Cooper was challenging.

### B. Cooper's Amended Complaint

Cooper's recent filing, which the Court has construed as an Amended Complaint, totals 113 pages and identifies the following Defendants: (1) Cynthia Link (incorrectly identified as Cynthia Lik and Cynthia Links), identified as the facility manager at SCI Graterford; (2) Mark Capaozza, identified as the Facility Manager at SCI Fayette; (3) Mr. Armel, identified as the Deputy Facility Manager at SCI Fayette; (4) Mr. Nickleson, identified as another Deputy Facility Manager at SCI Fayette; (5) Captain W. Tift, employed at SCI Fayette; (6) Captain G.S. Robinson, employed at SCI Graterford; (7) Captain Mr. Terra, employed at SCI Graterford; (8) Lieutenant K. Ridgley, employed at SCI Graterford; (9) Lieutenant Patton, employed at SCI Graterford; (10) Lieutenant W. Louden, employed at SCI Fayette; (11) Lieutenant D. Collins, employed at SCI Fayette; (12) Lieutenant Parker, employed at SCI Fayette; (13) Lieutenant/Captain Jane Doe, employed at SCI Graterford; (14) Lieutenant/Captain Jane Doe,

3

employed at SCI Graterford; (15) Sargent Alimon, employed at SCI Graterford; (16) Correctional Officer Tucker, employed at SCI Graterford; (17) Correctional Officer Bueno, employed at SCI Graterford; (18) Unit Manager J. Hawk, employed at SCI Graterford; (19) Dr. Boley, a doctor at SCI Graterford; (20) Dr. Sharon, another Doctor at SCI Graterford; (21) Joseph C. Korszniak, the Correction Health Care Administrator at SCI Graterford; (22) Ms. Neda Rice, the Correction Health Care Administrator at SCI Fayette; (23) M. Savago, a Registered Nurse at SCI Graterford; (24) Ms. Gretchen Scarry, the record-room supervisor at SCI- Fayette; (25) Ms. Nemal, a records room assistant at SCI Fayette; (26) Ms. Boltze, another records room assistant at SCI Fayette; (27) Ms. Gower, another records room assistant at SCI Fayette; (28) Ms. F. Fenn, another records room assistant at SCI Fayette; (29) Ms. Nixson, the records room supervisor at SCI Graterford; (30) Ms. Sassano, a records room assistant at SCI Graterford; (31) Ms./Mr. Jane/John Doe, records room assistants at SCI Graterford; (32) Peter Saavadra, a psychologist at SCI Fayette; (33) S.L. Brown, a "correctional employee" at SCI Graterford; (34) Chris Steffino, the safety manager at SCI Graterford; (35) Mr. Seed, a maintenance man at SCI Graterford; (36) John Doe, a correctional officer at SCI Graterford; (37) John Doe, a correctional officer at SCI Graterford; (38) John Doe, a correctional officer at SCI Graterford; (39) John Doe, a correctional officer at SCI Graterford; and (40) John Doe, a correctional officer at SCI Graterford. (Am. Compl. 2-8.)[1]

Cooper indicates that he seeks to raise the following claims: (1) First Amendment claims that he was denied access to the court; (2) Fifth Amendment claims that he was denied due process; (3) Sixth Amendment claims that he was denied "defense in court"; (4) Eighth Amendment

---

[1] The Court adopts the pagination assigned to the Amended Complaint by the CM-ECF docketing system.

4

claims that he was denied his right to be free from cruel and unusual punishment; and (5) Fourteenth Amendment claims that he was denied due process. (*Id.* at 9.) His specific allegations are discussed further below.

### 1. Claims Based on Failure to Transfer to a County Prison

Cooper's claims are based on essentially the same set of events as his initial Complaint. According to the Amended Complaint and the docket for Cooper's criminal case, Cooper's sentence of five to ten years of imprisonment was vacated on February 10, 2017 and he was scheduled for resentencing. *See Commonwealth v. Cooper*, Docket No. CP-51-CR-0009765-2014 (Phila. Cty. Ct. Common Pleas). The docket reflects that the order granting resentencing also revoked Cooper's bail. According to the criminal docket, Cooper should have been transferred to a Philadelphia county prison for resentencing, but he was not brought down from SCI Fayette for his first scheduled resentencing hearing.

After resentencing was continued, the state court issued a writ to have Cooper moved to SCI Graterford for purposes of the resentencing. Cooper was ultimately transferred from SCI Fayette to SCI Graterford and resentenced on June 8, 2017 to one to two years of confinement in a state prison, with a recommendation that he be housed at SCI Chester. The docket for Cooper's criminal case also reflects that Cooper was represented by counsel from the Defender Association of Philadelphia.

In his Amended Complaint, Cooper alleges that the Department of Corrections' failure to transfer him to a county facility for resentencing violated his constitutional rights. Cooper alleges that he brought this issue to the attention of various officials at SCI Fayette and SCI Graterford, but he was never transferred to the county facility. He claims that, had he been so transferred, he "would have posted bail" because he would have had access to a phone that he

could have used to call a bail bondsman. (Am. Compl. at 13.) He also claims that he would have been able to contact family members to "help get his witnesses in his behalf for Court," which he apparently was not able to accomplish at SCI Graterford. (*Id.*) Although Cooper represents at times in his Amended Complaint that his conviction was vacated, nothing on the docket suggests that his conviction was ever vacated.

Cooper also alleges that the attorney who represented him at his resentencing "did not present mitigating circumstance." (*Id.*) Cooper does not clarify what evidence his attorney should have presented to the Court but he alleges that he "did not know he had a right to have this entered into his case," that it would have "made a differant [sic] out come in his trail [sic] [due] to the overstay." (*Id.*) Cooper also alleges that, if he had been housed at a county prison rather than at SCI Graterford, he would have been able to "make bail" and perform his own investigation, "and he would have know[n] of this." (*Id.*)

### 2. Placement in the RHU at SCI Fayette

On May 13, 2017, prior to his resentencing, Cooper was placed in the RHU at SCI Fayette "for no just cause." (*Id.* at 10.) Cooper's allegations are again somewhat disjointed, but it appears he is claiming that he was placed in the RHU as a result of a false positive on a urine test. (*Id.* at 22.) He also alleges that he was not told why he was placed "in A/C status in the RHU." (*Id.*) Cooper alleges that Neda Rice, identified as the Correction Health Care Administrator at SCI Fayette, "made a report and to security that a false positive test [result] came into play and to disregard it." (*Id.* at 65.) He also alleges that Rice's report was given to other Defendants within a few days of Cooper's placement in the RHU. (*Id.*; *see also id.* at 22-23 (regarding Defendant Armel) & 27 (regarding Defendant Triff).) Cooper appears to be

6

alleging that he should have been released from the RHU based on Rice's report, which was communicated to various other Defendants, but that he was not so released.

Cooper also alleges that he was denied a cane once placed in the RHU. He also indicates that his mental health declined due to his placement in the RHU, but that he was denied mental health treatment or services.

### 3. Placement and Conditions in the RHU at SCI Graterford

On May 16, 2017, three days after Cooper was placed in the RHU at SCI Fayette, he was transferred to SCI Graterford, where he was also confined in the RHU "and was not told why or given a reason for it" even though he repeatedly asked for an explanation. (*Id.*) He also claims he was housed there without notice of a misconduct or a hearing. (*Id.* at 11.) It appears from the Amended Complaint that Cooper may have been housed in the RHU at SCI Grateford because he was previously housed in the RHU at SCI Fayette based on the allegedly false urine. Cooper was housed at SCI Graterford for a period of approximately two months. He also alleges that he was subjected to various unconstitutional conditions during his confinement there.

Cooper indicates that he was prevented from accessing the law library. As a result, he claims he was not able to use the library to "[prepare] his case for court," apparently a reference to his criminal case, and to prepare paperwork related to his "illegal detention in the state" because of the failure to transfer him to a county facility. (*Id.*; *see also id.* at 58.) It appears that Cooper in part sought to research issues related to his criminal liability. (*See id.* at 87.) He also claims that he was prevented from contacting his family or calling his attorney. (*Id.* at 30.)

Cooper contends that sewage would leak out from the walls and stagnate in front of his cell for days at a time. The waste water left a foul smell that left Cooper feeling sick, especially since the ventilation in his cell did not work. He alleges that the Defendants blamed the issue on

7

the age of the facility. Cooper injured himself by falling in the water outside his cell and claims he did not "get his cane replaced or get proper medical care." (*Id.* at 11.)

Cooper also alleges that he was a "bottom bunk and bottom tier inmate, meaning no climbing steps [due] to risk of injury." (*Id.* at 10.) He indicates that he was under a doctor's order not to ascend or descend stairs. (*Id.* at 30.) Despite that status, however, Cooper was required to walk up and down steps at SCI Graterford if he wanted to shower. Cooper also alleges that he ambulates with a cane but was deprived of the cane while at SCI Graterford. He suggests that it was lost or taken in the course of his transition from SCI Fayette and that he did not receive another cane until he returned to SCI Fayette. (*Id.* at 62.) Cooper alleges that various Defendants were aware of his medical conditions and saw him walking the steps without a cane, but did nothing to help him. When Cooper returned to SCI Fayette, he was again housed in the RHU "without cause or reason." (*Id.* at 11.)

### 4. Retaliation

As with his initial pleading, Cooper suggests at various points in his Amended Complaint that he was retaliated against. For example, he claims that he complained about and/or requested various things, but that correctional staff disliked this practice because "it [made] them do work they would rather not do." (*Id.* at 15.) Accordingly, "'mean staff' would ignore [Cooper] out of retaliation." (*Id.*) He also alleges that certain Defendants required him to walk the stairs at SCI Graterford in retaliation for filing grievances about the unsanitary conditions. (*See, e.g., id.* at 30.)

### II. STANDARD OF REVIEW

As Cooper is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a

8

complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* The Court may also consider exhibits attached to the complaint and matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). As Cooper is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, the Court will dismiss certain of Cooper's claims, but permit him to proceed on other claims.

#### A. Claims That Cooper Should Have Been Transferred to a County Prison

Cooper again claims that he should have been transferred to a Philadelphia prison once his sentence was vacated. He also claims that he probably would have been released on bail if he had been so transferred rather than remaining in the state system. Cooper's allegation that he would have been released on bail is speculative at best, especially since the order granting resentencing also revoked his bail. *See Commonwealth v. Cooper*, CP-51-CR-0009765-2014 (Phila. Cty. Ct. Common Pleas). In other words, even if Cooper had been incarcerated in a county prison and had been able to get in touch with his family, his criminal docket indicates that

9

he was not eligible for release on bail. In any event, inmates do not have a liberty interest in an anticipated release or a transfer to a more desirable institutional setting. *See Powell v. Weiss*, 757 F.3d 338, 343 (3d Cir. 2014) (finding no liberty interest in an "anticipated transfer to a community correctional center"); *Thompson v. Pitkins*, 514 F. App'x 88, 89 (3d Cir. 2013) (per curiam) ("[P]risoners have no liberty interest arising from the Due Process Clause in a particular place of confinement." (citing *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983)); *Bolden v. United States*, No. CIV. A. 93-5463, 1994 WL 246173, at *2 (E.D. Pa. June 7, 1994) ("The due process clause of the Fourteenth Amendment does not afford a prisoner freedom of choice with respect to the location of his incarceration."). Accordingly, Cooper cannot state a constitutional claim based on his allegation that he should have been incarcerated in a county prison rather than in state prison while he awaited resentencing.[2] *Beatty v. Clerk of Courts*, No. CIV.A. 11-07240, 2012 WL 2873567, at *3 (E.D. Pa. July 13, 2012) ("[A]lthough Defendant Clerk of Courts seems derelict in its duty to promptly enter the order vacating Plaintiff's sentence, Plaintiff had no protectable liberty interest in being housed in county prison while waiting for his resentencing"). To the extent Cooper argues that his confinement at SCI Graterford pending resentencing violated state law, his allegation does not establish a basis for a constitutional violation. *See Bush v. Rendell*, 533 F. App'x 141, 144 (3d Cir. 2013) (per curiam) ("We decline to address

---

[2] Although Cooper's sentence was vacated, his conviction was still valid and he was being held pending resentencing. Thus, his claims sound more in an institutional preference rather than in an allegation that he should not have been incarcerated at all, despite his characterization of his situation as an "overstay." (Am. Compl. at 12.) Additionally, *Sample v. Diecks*, which Cooper cites in his Amended Complaint, is inapposite here. 885 F.2d 1099 (3d Cir. 1988). In *Sample*, the plaintiff was granted bail pending a new trial and his family was ready to post the required bail, but the senior records officer at the prison where the plaintiff was housed erroneously claimed that he was ineligible for release because he was still serving time on another sentence. Here, by contrast, Cooper was scheduled for a resentencing but his bail was revoked. His assertion that he would have been released on bail had he been transferred to a county prison is entirely speculative.

10

Allen's argument that his transfer violated Pennsylvania law because that claim is not cognizable in an action under § 1983.").

Although Cooper raises multiple claims against most of the Defendants, he has named some of the Defendants based solely on their alleged role in failing to transfer him to a county prison. As the Court has found no basis for Cooper's claim that his constitutional rights were violated when he was not transferred to a county prison for resentencing, the Court will dismiss the Defendants against whom Cooper only asserted this claim. Those Defendants are Gretchen Scarry, Nemal, Boltze, Gower, Fenn, Nixson, Sassano, and Jane/John Doe, who are identified as Defendants twenty-four through thirty-one in the Amended Complaint.

## B. Fifth Amendment Claims

Although Cooper indicates that he is raising Fifth Amendment claims, none of the Defendants are federal actors, so the Fifth Amendment does not apply here. *See Mutschler v. SCI Albion CHCA Health Care*, 445 F. App'x 617, 621 (3d Cir. 2011) (per curiam) (citing *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)); *Basile v. Elizabethtown Area Sch. Dist.*, 61 F. Supp. 2d 392, 403 (E.D. Pa. 1999). Rather, Cooper must pursue any due process challenges under the Fourteenth Amendment. Accordingly, the Court will dismiss any Fifth Amendment claims.

## C. Sixth Amendment Claims Based on Attorney's Performance

Cooper appears to be claiming that he was denied the effective assistance of counsel in violation of the Sixth Amendment when his attorney failed to present mitigating evidence at his resentencing hearing and/or at trial. It is not clear how the named Defendants—all of whom are employees at State prisons—could be held responsible for counsel's alleged failures in Cooper's criminal case. In any event, a claim that counsel was ineffective in connection with criminal

11

proceedings is not cognizable in a civil rights proceeding if the underlying conviction and sentence remains intact, as is the case here. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("[T]o recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" (footnote and citation omitted)); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)— no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)). Accordingly, the Court will dismiss Cooper's Sixth Amendment claims based on his attorney's conduct.[3]

### D. Eighth Amendment Claims

Cooper raises numerous Eighth Amendment claims challenging the conditions of his confinement. In screening Cooper's initial Complaint, the Court evaluated these claims under the Eighth Amendment. However, those claims are properly evaluated under the Fourteenth

---

[3] Nothing in the Court's Memorandum should be understood to prevent Cooper from challenging the adequacy of counsel's performance in a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 if appropriate. However, there is no apparent basis for proceeding on these claims in a § 1983 action, because Cooper's attorney cannot be sued under that statute even if Cooper's conviction or sentence were vacated. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." (footnote omitted)).

12

Amendment because Cooper was awaiting resentencing after his sentence was vacated, and was therefore considered a pretrial detainee.[4] *See Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007) ("Although both Stevenson and Manley had been convicted at the time of their complaint, they are classified as pretrial detainees for purposes of our constitutional inquiry" because they were awaiting resentencing). Accordingly, going forward, the Court will evaluate Cooper's claims challenging the conditions of his confinement while he was awaiting resentencing under Fourteenth Amendment standards rather than the Eighth Amendment. Any claims challenging conditions of Cooper's confinement while he was a convicted and sentenced inmate will be evaluated under the Eighth Amendment.

### E. Remaining Claims

Cooper's remaining claims challenge his placement in the RHU at SCI Fayette and SCI Graterford as well as the conditions in the RHU, particularly the conditions at SCI Graterford. He also raises retaliation claims. Cooper will be permitted to proceed on those claims at this time.

### IV. CONCLUSION

For the foregoing reasons, the Court will dismiss certain of Cooper's claims and allow him to proceed on his remaining claims. The Court will not permit Cooper to amend his dismissed claims because amendment of those claims would be futile. An appropriate Order follows directing service on the remaining Defendants.

BY THE COURT:

_____
PETRESE B. TUCKER, J.

---

[4] Dismissal of Cooper's initial Complaint was in any event proper because the Complaint failed to comply with Federal Rule of Civil Procedure 8 or explain how each Defendant was responsible for violating Cooper's rights.

13